Argued November 21, 1977, reversed January 23, 1978

PETERSON et al, *Respondents,*
*v.*
CITY COUNCIL FOR THE CITY OF
LAKE OSWEGO, OREGON, *Appellant.*
(No. 93816, CA 8237)

574 P2d 326

Richard J. Geisert, Certified Law Student, Lewis and Clark College, Northwestern School of Law, Portland, argued the cause for appellant. On the briefs was Lawrence Wm. Jordan, Jr., Lake Oswego.

Richard E. Fowlks, Portland, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

This is a writ of review proceeding challenging the action of the City Council for the City of Lake Oswego (the City Council) granting variances to the Lake Oswego Library Board for expansion of the Lake Oswego Library. The circuit court reversed the decision of the City Council granting the variances. For the reasons stated below, we reverse the circuit court decision, thus reinstating the City Council's grant of variances.

In September 1974, the Library Board, an advisory body to the City Council, submitted a conditional use permit and variance application to the Lake Oswego Planning Commission. The application contemplated a major expansion of the physical facilities of the Lake Oswego Library. The variance application, designated VAR 18-74, requested the following variances:

(1) A trading of landscaping for required parking;

(2) A reduced front setback;

(3) A reduced rear setback of two feet;

(4) A reduced side-yard setback;

(5) Provision for 18 parking spaces within four feet of the edge of the library lot; and

(6) Increased lot area coverage.

At the January 16, 1975, City Council meeting, the Council agreed to meet with the Planning Commission and the Library Board on February 6 to discuss the expansion of the library. The fact that the meeting was planned was recorded in the minutes of the City Council meeting of January 16. On February 6, the aforementioned parties met as scheduled. The minutes of the meeting indicate that the parties engaged in a general discussion about how the library expansion would affect the Lake Oswego community and whether the variance requests were excessive.

[ 183 ]

On February 24, 1975, the Planning Commission approved the Library Board's application for a conditional use permit but denied the request for variances. On March 18, 1975, after conducting a public hearing, the City Council voted to affirm the action of the Planning Commission. Subsequently, the City Council directed the City Manager to meet with the Library Board and the library architect in order to draw up revised plans for the library. On June 5, 1975, the Library Board submitted a new variance application to the Planning Commission, designated VAR 17-75, requesting the following variances:

(1) A rear setback of nine feet;

(2) Provision for 18 parking spaces within eight feet of the edge of the library lot.

The library building proposed in VAR 17-75 was six to ten feet lower in height in parts and covered less of the lot than the one proposed in VAR 18-74.

After conducting a public hearing on June 23, 1975, the Planning Commission granted variance request VAR 17-75. Petitioners appealed the decision of the Planning Commission to the City Council. The City Council conducted a public hearing on the matter on August 5, 1975, and then affirmed the action of the Planning Commission in granting VAR 17-75.

Petitioners, in October, 1975, filed a petition for writ of review in the circuit court. In April, 1976, petitioners moved to amend their petition for review and supplement the record. The circuit court granted the motion over objection of the City Council. In March, 1977, the court allowed the writ of review and reversed the decision of the City Council, making the following findings of fact and conclusions of law:

*"FINDINGS OF FACT*

"1. The June 5, 1975, variance application, variance permit No. 17-75, was a reapplication and resubmission of the September 11, 1974, variance application, variance permit No. 18-74, which was denied on March 18, 1975, by defendants;

"2. The variance application, No. 17-75, was filed within six months of the final denial by defendant of the variance application, No. 18-74;

"3. A meeting between the Library Board and defendant took place on February 6, 1975;

"AND, the Court makes the following

"*CONCLUSIONS OF LAW*

"1. Defendant was without jurisdiction or authority to consider the June 5, 1975, variance application, No. 17-75, which was filed in violation of LOC 50.735, and therefore the August 5, 1975, decision of the Lake Oswego City Council upholding the variance request is void;

"2. The February 6, 1975, meeting between the Library Board and defendant deprived plaintiffs of a hearing on the merits before an impartial governing body and constituted an ex parte contact proscribed by *Fasano v. Board of County Commissioners* [264 Or 574, 507 P2d 23 (1973)],

"3. The Lake Oswego Zoning Ordinance, LOC 50.010 et seq applied to and governed this application for variance request."

The City Council appeals.

I.

The first assignment of error made by the City Council is that the circuit court erred when it granted petitioners' motion to amend their petition for writ of review and to supplement the record. The original petition in this case requested the City Council

"* * * to certify to [the circuit court] * * * all of the records, transcripts, exhibits and proceedings of all the hearings conducted by the City Council regarding the subject variance request identified in the records as VAR 17-75 and all other materials necessarily related thereto * * *."

In March, 1976, petitioners first learned of the February 6, 1975, meeting of the City Council, the Planning Commission and the Library Board. The return to the original petition contained no indication that such a meeting was held. Petitioners, in April,

[ 185 ]

1976, moved that the return to the writ be supplemented to reflect the existence of the meeting and that their petition be amended to contend that the meeting was an impermissible ex parte contact between the City Council and the Library Board. Their motion was supported by two affidavits.

■ The City Council first argues that the motion to amend was improperly granted because it was based upon hearsay, since neither affidavit alleged personal knowledge of the meeting.[1] However, no such objection was made to the motion at the circuit court. In fact, the record does not reveal that any reason was stated in support of the objection. An objecting party who has made only a general objection cannot upon appeal assert for the first time a specific ground of objection. *Groce v. Fidelity General Insurance,* 252 Or

---

[1] The trial court had jurisdiction to allow the petition for writ of review to be amended. ORS 34.030 provides in pertinent part:

"* * * A writ shall not be allowed unless the petition therefor is made within 60 days from the date of the decision or determination sought to be reviewed."

The original petition in this case was filed within the 60-day period, but the amended petition was not filed until 15 months after the City Council decision in issue. If we analogize the 60-day period to a statute of limitations and the petition for writ of review to a complaint, we are faced with the situation of a complaint amended after the statute of limitations controlling the cause of action stated by the amended complaint has run. This situation presents no jurisdictional question, because, unless the opposing party objects by way of demurrer or answer, *see* ORS 12.010 and 16.260(7), the defense is deemed waived. *Hewitt v. Thomas et al,* 210 Or 273, 310 P2d 313 (1957). In this case, the City Council made no such objection by motion to quash to the amended petition.

If we analogize the 60-day period to the time required to file a notice of appeal, *see Meury v. Jarrell,* 16 Or App 239, 243, n 1, 517 P2d 1221, *aff'd* 269 Or 606, 525 P2d 1286 (1974), and the petition for writ of review to a notice of appeal, we are faced with a situation of a notice of appeal amended to reflect a different set of points on which the appellant intends to rely after the time permitted to file such notice. No question of jurisdiction arises in this situation, because, once the original notice of appeal has been filed and served within the statutory time limits, the court has discretion to permit an amended statement of the points on which appellant intends to rely. ORS 19.029(1)(e), 19.033(2); *see Stahl v. Krasowski,* 281 Or 33, 573 P2d 309 (1978); *Millard v. Mitchell Bros.,* 261 Or 165, 492 P2d 783 (1972). In this case, the City Council does not contend that the original notice of appeal was not filed and served within the appropriate statutory time limits.

296, 307, 448 P2d 554 (1968). Next, the City Council argues that the motion to amend was not "in furtherance of justice." ORS 16.390 provides:

> "The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved."

In interpreting ORS 16.390, it has been held that the allowance of an amendment is within the sound discretion of the trial court and will not be reversed unless there is a showing of an abuse of discretion. *See Rankin v. White,* 258 Or 252, 255, 482 P2d 530 (1971); *Quirk v. Ross,* 257 Or 80, 83, 476 P2d 559 (1970). We find no abuse of discretion here. The issue raised by the motion to amend satisfied the statutory criterion of ORS 16.390.

■ The City Council next argues that the motion to supplement was improperly granted because the original return to the writ was fully complied with. As indicated above, the petitioners requested the record of the public hearing held by the City Council on VAR 17-75, as well as "all other materials necessarily related thereto." The City Council argues that since the February 6 meeting occurred before VAR 17-75 was applied for, material relating to it does not fall within the scope of the applicant's writ of review request. We agree that this meeting did not specifically involve VAR 17-75. At the time of the meeting the Library Board was still seeking the variance proposed in VAR 18-74. However, it follows logically that when the court allowed the motion to amend the petition, it must have accordingly allowed the motion to supplement the record to reflect the issues raised by the

amended petition. The circuit court correctly ordered that the return to the writ be supplemented.[2]

## II

The second assignment of error made by the City Council is that the circuit court erred when it held that the City Council was without authority to consider VAR 17-75.[3] Lake Oswego Ordinance LOC 50.735 provides:

> "Any application for variance, conditional use, zone change or other application made to the Planning Commission under the provisions of the Lake Oswego Code and requiring a discretionary determination by the Planning Commission, after being finally denied by the Planning Commission or the City Council, shall not be resubmitted within less than six months following the date of such final denial."

Petitioners argued and the circuit court agreed that LOC 50.735 prohibited the City Council and Planning Commission from considering VAR 17-75 in light of the fact that VAR 18-74 had been denied less than six months prior to the submittal of VAR 17-75. The City Council argues that VAR 17-75 was substantially different from VAR 18-74 and thus does not fall within the prohibition of LOC 50.735.

■ We agree with the city's interpretation of the word "application" in LOC 50.735. It does not prohibit the City Council or Planning Commission from considering anew a variance application if the conditions or circumstances which led to the denial in the initial application are substantially changed.

---

[2] ORS 34.090 is the source of the circuit court's power to order that a return to a writ be supplemented. ORS 34.090 provides:

> "If the return to the writ is incomplete, the court may order a further return to be made."

[3] Neither party raises on appeal whether the city is required to conform to its own zoning ordinances. ORS 227.286 appears to make such conformance mandatory, absent an ordinance to the contrary:

> "City ordinances regulating the location, construction, maintenance, repair, alteration, use and occupancy of land and buildings and other structures shall apply to publicly owned property, except as the ordinances prescribe to the contrary."

■ We hold that LOC 50.735 did not bar the City Council and Planning Commission action in this case. VAR 17-75 differed in at least four significant respects from VAR 18-74:

(1) It eliminated the front setback request entirely and reduced the rear setback request by seven feet;

(2) It reduced the parking lot setback by four feet;

(3) It proposed a building covering less of the lot; and

(4) It reduced the overall height of that building by six to ten feet.

The City Council and Planning Commission had the authority to consider VAR 17-75 because the circumstances upon which VAR 18-74 might have been denied had changed. The trial court's finding to the contrary was erroneous.

### III.

The third assignment of error made by the City Council is that the circuit court erred when it held that the February 6 meeting of the City Council, Library Board and Planning Commission was an ex parte contact proscribed by *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973). Petitioners recognize that the City Council, Planning Commission and the Library Board cannot be flatly prohibited from having ex parte contacts. To do so would be to forbid the City Council from conferring with its own internal governmental agencies and would severely impede the operation of municipal government. Petitioners, however, do argue that the February 6 meeting was an impermissible ex parte contact because (1) no adequate notice of the meeting was given to interested parties; (2) the meeting was neither held on the normal meeting day nor in the normal meeting place of the City Council; and (3) no transcribed minutes were made of the meeting.

■ In *Fasano,* the Supreme Court stated:

"* * * Parties at the hearing before the county governing board are entitled to an opportunity to be heard, to an opportunity to present and rebut evidence, to a tribunal which is impartial in the matter—i.e., having had no pre-hearing or ex parte contacts concerning the question at issue * * *." 264 Or at 588.

We have interpreted *Fasano* as not placing an absolute prohibition on ex parte contacts between county governing boards and parties to decisions pending before them. Rather, we have stressed that if an ex parte communication does take place, it must be placed on the public record to enable interested persons to rebut the substance of the communication. In *Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 629, 536 P2d 435 (1975), we stated:

"In any event, we hold there is no violation of *Fasano* when, as in this case: (1) the 'ex parte contracts' [sic] were not with the proponents of change or their agents, but, rather, with relatively disinterested persons; (2) the contacts only amounted to an investigation of the merits or demerits of a proposed change; and, most importantly, (3) the occurrence and nature of the contacts were made a matter of record during a quasi-judicial hearing so that parties to the hearing then had an opportunity to respond. * * * As we read *Fasano* its basic requirement is an *impartial tribunal*; ex parte contacts were just mentioned as one way in which impartiality could be compromised. * * *" (Emphasis supplied.)

*See also West v. City of Astoria,* 18 Or App 212, 226 n 3, 524 P2d 1216 (1974) (specially concurring opinion); Peck, *Regulation and Control of Ex Parte Communications with Administrative Agencies,* 76 Harv L Rev 233, 266-68 (1962). The Supreme Court expressed a similar view of *Fasano* in *Petersen v. Klamath Falls,* 279 Or 249, 257 n 8, 566 P2d 1193 (1977), when, in discussing the propriety of ex parte contacts in city annexation proceedings, it stated:

"* * * [A]n absolute prohibition on ex parte contacts would actually have a greater tendency to inhibit rather than promote the reliability of the local decision-making process * * *."

Courts in other jurisdictions which have also considered the propriety of ex parte contacts in a zoning context have also reached similar conclusions. *See Hot Shoppes, Inc. v. Clouser,* 231 F Supp 825, 832-33 (DDC 1964); *Jarrott v. Scrivener,* 225 F Supp 827, 834 (DDC 1964); *Sheridan-Kalorama Neigh. C. v. D.C. Bd. of Zon. Adj.,* 341 A2d 312, 318 (DC App 1975); *Wilson v. District of Columbia Bd. of Zoning Adjust.,* 289 A2d 380, 383-84 (DC App 1972). These courts recognize that an ex parte contact between a zoning board and an interested party which is neither revealed to other interested parties nor made a part of the public record is a ground for reversing a decision of a zoning board.

■  The petitioners in this case were not given formal notice of the February 6 meeting prior to the time that the City Council held public hearings on VAR 18-74 and VAR 17-75; thus they did not have the opportunity to respond to the viewpoints expressed at that meeting. However, we note that the February 6 meeting was scheduled at a public meeting of the City Council on January 16 and that, notwithstanding petitioners' contention to the contrary, minutes (albeit not a verbatim transcript) of the February 6 meeting were prepared. We also note that even after the February 6 meeting was held, the City Council affirmed the action of the Planning Commission denying the Library Board variance request, VAR 18-74. The variances which were subsequently requested and later approved by the City Council—VAR 17-75—were substantially different. These facts lead us to conclude (1) that the City Council never attempted to hold secret, off-the-record meetings with the Library Board regarding its variance requests; and (2) that the Council acted impartially throughout the entire applications process. We do not assume that the City Council acted partially in bad faith simply because it was exposed to evidence presented in a non-adversary fashion—particularly when it was evidence that the City Council did not accept as compelling. *See Tierney v. Duris, Pay Less Properties, supra* at 628-29, citing *Withrow v.*

*Larkin,* 421 US 35, 56, 95 S Ct 1456, 43 L Ed 2d 712 (1975). The circuit court erred in holding that the ex parte contact that occurred between the City Council, the Planning Commission and the Library Board was proscribed under *Fasano.*[4]

Reversed.

---

[4]We do not deal with the question, in this case, of whether discussions among government officers and employes of the same political entity constitute ex parte contacts proscribed by *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), and we do not imply they are so proscribed. Here the City Council voluntarily dealt with the request of the Library Board for a variance as a request from a separate governmental entity.